Walde *v.* Bowers Battery Mfg. Co., Inc., Appellant.

Argued November 28, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Wm. A. Schnader,* with him *Louis F. Floge, Allen K. Grim, Stevens & Lee* and *Schnader & Lewis,* for appellant.

*Henry Temin,* with him *Todd Daniel,* for appellee.

OPINION BY MR. JUSTICE STERN, January 2, 1940:

This appeal is from an order of the court below discharging a rule to show cause why the service on defendant of a writ of summons in assumpsit should not be set aside. Defendant is a domestic corporation with its principal place of business in Berks County, but the present suit was commenced in Philadelphia and service was effected there at a place alleged by plaintiff to be a branch office of defendant.

Defendant is engaged in the manufacture and sale of storage batteries, its plant being in Reading. It maintains at 1724-26 Fairmount Avenue, Philadelphia, a constantly changing stock of from 200 to 400 storage batteries, of which about 200 or 300 per week go out in the course of the business transactions conducted there and are replaced by others sent from Reading. The batteries thus passing through the Philadelphia establishment represent a business of $40,000 a year.

The owner of the Fairmount Avenue property is one Bell, who leases it to H. J. Coleman, and defendant pays the latter $200 per month as "rent" and also 10¢ for every battery shipped out from there. The "rent" payment includes compensation to Coleman for various services performed by him in the interest of defendant's business in Philadelphia and for the garaging of defendant's truck.

Jobbers in Philadelphia and vicinity who handle defendant's batteries order them directly from Coleman. Defendant furnishes to him a list of these jobbers with the credit maximum allowed to each, and if such maximum is not being exceeded Coleman is permitted to deliver the batteries without further authorization from Reading. With each delivery there is given to the customer a sales slip, or bill, the printed heading of which is "Bowers Battery Mfg. Co., Inc., Reading, Penna. Sold to . . ." etc., except that in the case of the larger transactions the bills are sent from Reading. Some payments are made to Reading, others to Philadelphia; all

checks are made out to the order of defendant; those received in Philadelphia are endorsed by Coleman for deposit to the credit of defendant and deposited in Philadelphia in a bank from which balances are transferred periodically to defendant's bank in Reading; balances in the Philadelphia bank run as high as $2,500. Defendant owns a truck which operates in and around Philadelphia, making deliveries of the batteries; the expense of its operation is paid by Coleman. Records are kept in Philadelphia of all deliveries, collections, and stock inventories. Whenever possible, the servicing of the batteries is performed in Philadelphia by Coleman on behalf of defendant; otherwise they are sent to Reading for that purpose. Coleman is authorized to make, and does make, allowances and adjustments on claims of defendant's customers in the Philadelphia district.

The show windows of the Fairmount Avenue establishment bear the name, in large letters, of defendant corporation, with Coleman's name in smaller letters in the corner, and defendant's batteries are displayed in these windows. Defendant's name, with the Fairmount Avenue address, is listed three times in the telephone directory. Defendant's letterheads designate Philadelphia as the location of one of its branches. Some of the correspondence with defendant's customers is carried on from Philadelphia. Defendant, in 1938 and again in 1939, was assessed in Philadelphia County for the mercantile license tax for wholesalers, and the bills rendered for such tax were paid without question, one of them even after the beginning of the present suit.

At common law a corporation could be sued only in the jurisdiction where it had its legal domicile, that is, at its principal place of business. As the result, however, of statutes which have been enacted, and which have been reviewed in many of our cases, the rule is now established, as set forth in Amram's Pennsylvania Common Pleas Practice, 4th ed., page 34, section 19, that: "Process may be issued against a domestic cor-

poration in any county where corporate property is situated in whole or in part, or where the corporation conducts a substantial part of its business, exercises its franchises and locates the whole or part of its property . . ." This statement is justified by discussions of the subject to be found in *Park Brothers & Co., Ltd., v. Oil City Boiler Works,* 204 Pa. 453, 456; *DeHaas v. Pennsylvania R. R. Co.,* 261 Pa. 499, 502; *Gengenbach v. Willow Grove Park Co.,* 280 Pa. 278, 280, 281; *Lobb v. Pennsylvania Cement Co.,* 285 Pa. 45; *Gilbert v. Lebanon Valley Street Railway,* 300 Pa. 384, 387; *Scott v. C. A. Hughes & Co.,* 320 Pa. 442; *Murphy v. Pennsylvania Casualty Co.,* 122 Pa. Superior Ct. 80; *Topyrik v. Russian Brotherhood Organization of U. S. A.,* 135 Pa. Superior Ct. 334, 337, 338. In the *Lobb* case it was stated by Mr. Justice SCHAFFER (page 47) : "We have many times been called upon to determine whether Pennsylvania corporations, whose principal office and place of business are in one county of the state may be served with process in another county. The guiding principle of the decisions is that a domestic corporation may be served in any county where it habitually carries on a substantial part of its business or exercises its franchises and has property."

It cannot seriously be doubted that defendant comes within the scope of this "guiding principle" as far as the County of Philadelphia is concerned. Counsel for defendant argues that the Fairmount Avenue establishment is a "warehouse," that defendant merely stores goods there, that Coleman is a warehouseman, and that all he does is to "release" defendant's goods from time to time to those who place orders for them. An analysis of the facts, however, reveals that the terms "warehouse" and "release," as thus applied, are euphemisms rather than accurate legal designations. Coleman conducts no public warehouse as a depository for merchandise; the only goods in the Fairmount Avenue premises are those of defendant, and they are there not by way of storage

for either permanent or temporary safekeeping but for the purpose of distribution and delivery day by day to defendant's various customers, just as is done in the case of a stock of merchandise in any ordinary store. Each week there is a turnover of upwards of fifty per cent of these batteries. The title to all of them remains in defendant until an order is received from one of its jobbers, whereupon delivery is made and title transferred as evidenced by an accompanying sales slip; payment may be made in cash or, more usually, credit is extended and the bill paid at a later period. Such transactions are sales, pure and simple, carried on in Philadelphia. The fact that there is a prearranged maximum of credit allowed to each jobber in the district, of which Coleman is notified in advance, is of no legal significance. The deliveries are not mere "releases" of the batteries to persons who have previously bought them in Reading, but are deliveries to customers who then and there purchase them at the Philadelphia establishment, the title passing in Philadelphia, the delivery being made there, and the payment frequently being effected there. When to these facts are added the constant servicing done in Philadelphia, the adjustment allowances made there, the correspondence carried on there, the designation by the defendant on its own letterheads of the Philadelphia establishment as a branch, and the payment by defendant, or by Coleman on its behalf, of a mercantile license tax assessed against it in the County of Philadelphia, it would seem sufficiently clear that defendant is carrying on a substantial part of its business in the County of Philadelphia.

Defendant maintains that even if this be so the service of the writ in Philadelphia is unjustified, that the carrying on of business within a county other than that where the principal place of business of the corporation is located is not the proper criterion, and that the applicable statute is that of March 17, 1856, P. L. 388, which provides that when an action is commenced

against a corporation in any county in which the property of the corporation is wholly or in part situated, it shall be lawful for the sheriff to serve the writ, under certain circumstances, on any "manager or director" in such county.[1] Defendant contends that this act is to be interpreted as meaning, by implication, that no action may be commenced against a corporation in any county unless it has property situated there, and that the use of the word "situated" indicates that by "property" is meant permanent or fixed assets, as, for example, real estate, machinery, office equipment and fixtures, as distinguished from a stock of merchandise or other current or liquid assets. There is no authority for this position;[2] on the contrary, in *Scott v. C. A. Hughes & Co.,* 320 Pa. 442, the corporation which was there the defendant conducted an office in Philadelphia only for the making of contracts for the sale of the coal mined by it in Cambria County; its one asset in Philadelphia was a large bank account, all its tangible property being in Cambria County; nevertheless it was held, per curiam, that the corporation could be sued and served with process in Philadelphia. While the word "property" in the Act of 1856 should not be held to refer to property which is merely stored in a warehouse or otherwise *passively* located in another county than that where the principal place of business of the corporation is located, it certainly includes property which is *actively* used in the course of the business operations of the corporation, irrespective of whether such property consists of fixtures and machinery, or of a stock of merchandise the sale of which is the object of the corporate business. In-

---

[1] This was not the position assumed by defendant in its petition for the rule to set aside the service of the writ. The petition does not aver that defendant has no property situated in Philadelphia, but only that it does not conduct a substantial part of its business there.

[2] It was expressly repudiated in *Grubb v. The Manufacturing Co.,* 10 Phila. Reports 316.

deed, when the word "property" is thus construed, there is, from a practical standpoint, no difference between a requirement that a corporation have such property in the county and a requirement that the corporation do business there, so that either of these circumstances becomes, as our cases hold, sufficient justification for the commencement of suit and service of process upon the corporation in such county. In the present case, in addition to the truck, the records, and the bank account, defendant owned a large and constantly replenished stock of merchandise in Philadelphia, not merely immobilized there in a warehouse, but actively employed for business purposes, and sold and distributed from day to day to defendant's customers.

The order of the court below discharging defendant's rule to show cause why the service of the writ should not be set aside is affirmed.